Leopoldo Monclova Martínez, Plaintiff and Appellant, *v.* José María Blanco, Defendant and Appellee.

No. 4210. Argued December 6, 1928.—Decided December 16, 1929.

*Luis Freyre Barbosa,* for appellant. *Acuña & Janer,* for appellee.

Mr. Justice Aldrey delivered the opinion of the court.

Leopoldo Monclova, who is the owner of a one-story house numbered 21 on San Sebastián street in this city, brought suit against José María Blanco, who is the owner of house No. 19 adjoining thereto on the east and until a short time ago a one-story structure also, and alleged that there is a party wall between both houses; that the defendant has added another story to his house and, without the consent of the plaintiff, has built another wall on the party wall, not on his portion of the latter but beyond the center line thereof towards the facing of the wall on plaintiff's side, in such a manner that the buttresses or columns of defendant's house encroach on the space above and center line of plaintiff's house, projecting beyond the east facing on plaintiff's side; and that the defendant has installed an exhaust pipe which projects from the facing of the wall overlooking plaintiff's house, in such a way that, if the plaintiff should add another story to his house, said exhaust pipe would project inside the adjoining wall that were built for this purpose by plaintiff. On these allegations he prayed for a decree directing the defendant to pull down the wall erected by him on plaintiff's portion of the party wall, and to take away the aforesaid exhaust pipe.

Defendant answered, a trial was held, and, judgment having been rendered for the defendant, the present appeal was taken wherein, as the first ground of reversal, it is urged that the lower court erred in weighing the evidence.

As may be seen from the averments of the complaint, its theory is that one-half of the party wall belongs to the plaintiff, and the other half to the defendant; that the latter did not build the new wall "on his portion thereof but beyond the center line and on the portion of the party wall belonging

to the plaintiff''. In other words, that the defendant built on plaintiff's half adjoining his house, and that the columns and exhaust pipe project beyond the limit of the party wall on plaintiff's side and encroach on the space above and moiety of the party wall corresponding to his house.

The experts on both sides concur in that the party wall dividing the two houses is 45 centimeters thick, but they disagree as to whether or not the wall built thereon projects beyond the facing of the party wall on the side of Monclova's house. The expert for the plaintiff testified that the five or six buttresses or columns of the new wall protrude one or two centimeters on Monclova's side beyond the 45 centimeters thickness of the party wall, and that an exhaust pipe placed against the new wall, but not against the columns, also protrudes beyond that facing; while the expert for the defendant—the engineer who built the new story in Blanco's house —on the contrary testified that the interior facing of the new wall is twelve centimeters from the facing of the party wall on Blanco's side, thus leaving a vacant space which measures twelve centimeters; that the new wall is ten centimeters thick and, therefore, its exterior facing is twenty-three centimeters from the facing of the party wall on Monclova's side; and that as one half of forty-five is twenty-two and a half the result is that the new wall has been built over less than one half the thickness of the party wall. He also testified that, in order to secure the stability of the new wall, he built several columns or buttresses which project from the said new wall seven centimeters over Monclova's portion, thus leaving between said columns and the facing of the party wall on Monclova's side a vacant space measuring sixteen centimeters; that the exhaust pipe attached to the new wall has a diameter of fourteen centimeters which, added to the thickness of said new wall and to the jut, make a total of thirty six centimeters, thus allowing at that place nine centimeters of unoccupied space on Monclova's side; and that, therefore,

neither the columns nor the pipe protrudes beyond the limit of the party wall on the side of Monclova's house.

The trial judge made an ocular inspection, which confirmed the testimony of the expert for the defendant. The court found that the new wall is ten centimeters thick and its construction was started at twelve centimeters from the facing on the side of Blanco's house; that the most protruding part of the new wall (which we understand is that of the columns) reaches six centimeters beyond the center line of the party wall, and that the pipe projects fourteen centimeters from the new wall built by Blanco.

In view of the above evidence we are unable to conclude that the court below erred, as has been urged, in finding by its judgment that the defendant built at his expense the new wall, leaving a free space, which measures generally twenty three centimeters from the new wall to the facing of the party wall on Monclova's side, sixteen centimeters from the columns and nine from the exhaust pipe to the said facing. Therefore, it was not shown, as alleged in the complaint, that the columns and the exhaust pipe protrude beyond the limit of the party wall and encroach upon the space above plaintiff's house.

The second error assigned is predicated on the failure to apply to the case herein the provisions of section 586 of the Civil Code.

Before considering the applicability of the cited section, it would seem advisable to examine the juridical meaning of the party wall servitude.

. There is no controversy in the present case as to the dividing wall between the houses of the litigants being a party wall; hence we may begin by considering the rights held with respect to such dividing wall by the adjoining owners.

A party wall has never been, nor can it ever be, considered as the separate and definite property of each of the adjoining owners so that each of them could claim the exclusive ownership of the moiety next to his tenement. On the con-

trary, a party wall has always been considered as joint property, as property held jointly and·in indivision wherein each part owner is vested with ownership in each and every portion of the wall in proportion to his respective share. It has been so declared by the Supreme Court of Spain in its judgment of March 16, 1888, where that court said:

"A party wall dividing two urban tenements belongs in common to the adjoining proprietors, and, therefore, each of them is entitled to the use thereof as an exterior wall of his estate to any height he cares to build it within the limits allowed by municipal ordinances."

Manresa in his "Commentaries on the Spanish Civil Code," (vol. 4, p. 738), when dealing with the rights appertaining to party walls, writes as follows: *"Is a party wall a servitude?*—Strictly speaking, an easement of party wall is a community of property, a co-ownership, but of a special character. Laurent defines it as 'the undivided co-ownership in a wall, a ditch or a hedge, which separates or limits two adjoining tenements . . . . ; a party wall is property held in common *in forced indivision.*' Accordingly the common ownership in the wall is not understood in the sense that one half of the wall belongs to each of the adjoining part owners, so that the center line dividing its thickness marks the boundary of the two estates. The common wall is that which, *undividedly* throughout its full extent and thickness, belongs equally to two adjoining proprietors. If this was all, an easement of party wall would be nothing more than a community of property. But in cases of undivided ownership neither of the participants can use the common property to his exclusive benefit, since if he did so he would be encroaching upon the rights of the other owners; whereas in party wall servitudes the rights of the part owners are not so limited. When the law grants to every part owner of a party wall the right to erect thereon any structure for his own benefit and to the exclusion of the other part owners, such grant can not be made to him merely in his capacity as co-owner,

but also in recognition of a right of easement. In order to better explain why a party wall is something in the nature of an easement—a burden upon *the property of another* for the benefit of *an estate*—nothing would be better than to give a concrete analysis of the relation involved. A *party wall* is not *mine entirely,* it belongs to *another and to me* (co-ownership); but neither he nor I can use it, especially for certain purposes, unless it be in a *complete* manner. The whole wall in its physical integrity may be used by the co-owners (undivided co-ownership). Now, the indivision of the wall and the use of the whole of it by each part-owner determine the benefit of the user, which benefit is translated into a servitude that burdens the adjoining estate. There are certain constant uses wherein this relation does not appear so clearly; but there are others which, owing to their fixed and specific character, embody such relation perfectly defined, showing very plainly the reasons which inspired this legislation in Spain.''

It is not an essential requisite for the existence of a party wall that it should have been built on land belonging to both adjoining owners in common, because the wall may have been erected on land belonging to one of them only, and yet the rights to an easement of party wall may have been acquired by the other. It is only where each owner builds his wall joined to the wall of his neighbor that each of such walls belongs in severalty to the builder thereof, and there is no party wall servitude. The legal concept of an easement of party wall was unknown to the Romans, owing to their practice of building isolated dwellings. It was incorporated into the Spanish Civil Code and into our own Code as a consequence of the municipal ordinances, which regulated the concept when dwelling houses began to be erected contiguously.

According to that concept, the party wall which separates two adjoining tenements belongs undividedly to both part owners, and this is why section 582 of the Civil Code pro-

vides that the cost of repairing party walls shall be borne by all the co-owners thereof.

There is error, therefore, in the theory of the complaint, to the effect that each of the adjoining proprietors owns the moiety of the party wall which adjoins his tenement and that the other proprietor is barred from building any wall on the other moiety. The contrary is provided by section 584 of the said code when prescribing that every owner may, at his own expense, increase the height of any party wall upon paying for any damage which may be caused by the work, even if only temporary; and by section 585 when providing that the other owners who have not contributed to give the increased height to the wall may, nevertheless, acquire therein the right of part ownership by paying proportionately for the value of the work. This provision would be idle if either co-owner was allowed only to raise the party wall in half its thickness instead of the whole of it, especially since the law empowers every part owner to increase the height of a party wall, without limiting that right to the half of the wall adjoining his tenement; hence he may raise it the whole thickness if he so chooses. Such is the conclusion to be drawn from the decision of the Supreme Court of Spain of March 16, 1888, reported at page 428, volume 63, *Jurisprudencia Civil*. In that case one of the part owners of a party wall pulled it down and rebuilt it to a greater height than it had before, and, having been ordered to pull down that part of it which exceeded the previous height, the above court set aside the judgment which so ordered, and held that a party wall belongs in common to the adjoining proprietors, and that so long as no servitude has been established in favor of the adjoining tenement, the height of the wall may be increased.

It follows from the foregoing that where one of the adjoining proprietors raises the party wall, the common ownership subsists as before in that part of the wall which continues to be a common wall, and that the maintenance of the wall in the part so raised corresponds to the owner who

raised it, since it is not common property but his exclusive property. See 4 Manresa 764. Accordingly section 585 provides that owners who have not contributed to give the increased height to the wall may, nevertheless, acquire therein the right of part-ownership by paying proportionately for the value of the work.

The section cited by the appellant as not having been applied in the present case reads as follows:

"Sec. 586. Every owner of a party wall may use it in proportion to the right he may have in the part ownership. He may, therefore, build, supporting his structure on the party wall, or introduce joists up to one-half its thickness, but without interfering with the common and respective uses of the other part owners.

"In order that the part owner may make use of this right, he must previously obtain the consent of the other parties interested in the part ownership; and should he not obtain it, the conditions necessary in order that the new work may not injure the right of the former shall be fixed by experts."

This section refers to the manner in which part owners may use party walls and to the right to support their respective buildings on the party wall by resting thereon to its full thickness, truss-rods, beams or girders, or by introducing joists therein. It has no application to the present case, which does not involve any question of support on the party wall, but concerns the raising of a new wall on a party wall, as permitted by section 584, *supra,* to every owner doing it at his own expense. That the above two sections refer to different conditions has been decided, although incidentally, by the Supreme Court of Spain in its judgment of December 12, 1908 (*Jurisprudencia Civil,* vol. 112, p. 939). There a wall had been raised on a party wall, and it was urged that sections 577 and 579 of the Spanish Civil Code, which are identical with sections 584 and 586 of our Code—the latter section requires the consent of the other part owners, whereas section 584 does not—had been violated. The court said: "The trial court dismissed the claim of plaintiff to have the

wall raised on the party wall pulled down and the latter reconstructed to its original elevation, and found that the party wall can withstand the increased height given to it by Julio Cafranca, which fact entirely overcomes the contention set forth by Pedro Cabal in the first ground of his appeal in which the violation is claimed of sections 577 and 579 of the Civil Code, and *because apart from the diversity of the cases covered by the above two sections,* and that the latter section is not involved in the case at bar, etc." (Italics ours).

What we have said has no application to the exhaust pipe projecting over plaintiff's tenement, which the defendant placed on the outside of the new wall raised on the party wall. The said pipe can not be permitted there, because section 584 already cited authorizes only an increase in height of the party wall and such pipe is neither a wall nor an integral or necessary part thereof.

In view of the foregoing, plaintiff should not be mulcted in costs.

The judgment appealed from will be affirmed, with the modification that the aforesaid exhaust pipe must be removed within two months and that each party shall pay his own costs.